ELLA S. SMITH, respondent,

*v.*

ERNEST N. SMITH, appellant.

[Decided November 17th, 1919.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Foster, who filed the following opinion:

"About October 25th, 1916, conclusions were filed by me in this cause in which a decree was advised in favor of petitioner on the ground of extreme cruelty. Thereafter, in December, 1916, defendant presented his petition in which he alleged that he had learned since the hearing of the case, that during its pendency, petitioner had been guilty of improper conduct with one William H. Lyons, and thereupon the entry of the decree in petitioner's favor was stayed, and leave was granted to defendant to file a cross-petition for divorce on the ground of adultery alleged to have been committed by the petitioner with one William H. Lyons, at various places and at various times between April 20th, 1915, and July 4th, 1916; and the case was re-opened and evidence submitted in support of the allegations of the cross-petition. The petitioner offered no evidence and her counsel informs me that about the time the case was re-opened, she became broken in health and friends provided money for her to go to Kansas City, and she has written that for the first time in years she is happy with her child and that her mind is at rest and that she will have nothing more to do with this case.

"In support of his charge defendant has filed several affidavits, including one of William H. Lyons. These affidavits were taken without notice to Mrs. Smith or her counsel, and I am at a loss to understand why they were filed or are relied upon in any way, and I have ignored them in my consideration of the case.

"From the evidence offered, it appears that while the case of

the petitioner against the defendant was pending and being heard, she and her counsel employed a detective named William H. Lyons to obtain evidence against her husband and to protect her and her little girl, as she feared that her husband would attempt to take the child from her. Lyons called on her at her home frequently, sometimes daily, both in the daytime and at night, and she told several of her neighbors that he was a detective whom she had employed, and who was preparing papers for her; that she was assisting him in his detective work and that she and her father, who lived with her during part of this time, had employed him as a guardian for herself and child.

"Sometimes Lyons would be accompanied by Mr. Romine, petitioner's counsel, and sometimes the latter would call on petitioner and take Lyons away with him, and while these visits were being made Mrs. Smith is said to have told one of her neighbors that she thought a great deal of Lyons and would marry him if he were not married. While petitioner was living at Irvington with her father and child, under the name of Sutphen (which it is claimed is her maiden name which she assumed for the purpose of concealing her whereabouts from her husband), Dr. Simons treated Lyons at her home for a boil on his chin; on two occasions, between eight and nine o'clock at night, he found Lyons in bed, clothed in a bathrobe, and that Mrs. Smith told him her name was Smith, and that Lyons was a state detective whom she was assisting in his cases; and he was introduced by petitioner to her father.

"Petitioner was away from her home in Morristown for several days prior to and including July 4th, 1916, and she told one of her neighbors that she had spent the time in New York and Coney Island, and it appears that on June 29th, 1916, a man and woman engaged a room at the Oriole Hotel, Coney Island; they are said to have registered as 'Wm. N. Edwards and wife, Summit, N. J.,' at about three twenty-five P. M., and to have been assigned to room No. 14, and that they remained at this hotel until noon of July 4th. The registration was made by Mr. Edwards, and the woman who had charge of the registry and office states that the hotel had either thirteen or fourteen

bedrooms, that it was located on the beach and that she also attended to the bath houses; that she knew Mr. Edwards because about two years before, in 1914, he had called at the hotel and got acquainted with a, few people in the hotel, and that he then had his young nephew with him; that on his arrival he introduced the woman with him as his wife; and from photographs she identifies Mrs. Smith as the woman, and Mr. Lyons as the man.

"The registry book also shows that on September 14th, 1914, Charles Edwards and wife of Summit were assigned to room No. 14, and again on September 18th, 1914, to room No. 14, and that on October 5th, 1914, Charles Edwards and wife, of Summit, registered again; but the woman in charge of the registry did not know if this was the same Edwards who registered in 1916 and was assigned to room No. 14.

"This witness was interviewed by Edwards 'and one of Mr. Smith's attorneys in January, 1917, and she was shown the photograph of a woman whom she identified as Mrs. Edwards, and who it is claimed was Mrs. Smith; and Edwards then asked her if she remembered the time that he and his wife had stopped at the hotel, and when she replied she did, he asked her to sign an affidavit to that effect, which she did.

"The chambermaid who had charge of room No. 14 identified Edwards and the woman who accompanied him from photographs of Lyons and Mrs. Smith, although she states she forgets his appearance, and the best of her recollection is that she guesses the photograph of Lyons shown her is that of the man Edwards; she saw them in the room the day they arrived, and saw them go in and out. Mrs. Reilly, who had a candy stand opposite the hotel, states that in the summer time, she does not state the year, Mr. Edwards introduced a woman to her as his wife, when they bought some candy from her. She recognizes Lyons' and Mrs. Smith's photographs as Mr. and Mrs. Edwards. She had seen Edwards twice before this occasion, possibly in 1914, when they had refreshments and drinks at the bar with her husband, and never had any conversation with him.

"It further appears that about the conclusion of the former hearing Lyons telephoned Mr. Smith, asking for an interview,

*91 N. J. Eq.*                    Smith *v.* Smith.

and informed him that Mrs. Smith was about to leave the state with her child.

"It also appears that Lyons became angry over stories which he claimed Mrs. Smith was circulating about him and declared he was going to help Mr. Smith because he had money, and Mrs. Smith was still indebted to him for what he had done for her in the case. Lyons is said to be a fugitive from justice, and counsel on neither side have been able to locate him.

"This summary of the proof offered to establish the allegations of the cross-petition shows an entire absence of direct evidence of the offences charged, and it is subject to this criticism: If Lyons was the man who registered at the hotel as Edwards in 1916 and was the same man who was at the hotel with his nephew, a small boy, in 1914, no reason is offered to explain why he assumed the name of Edwards in 1914 when unaccompanied by a woman. One of the photographs of Mrs. Smith, whom the housekeeper, chambermaid and Mrs. Reilly identify as Mrs. Edwards, was taken, Mr. Smith states, about ten or fifteen years before, and admittedly is not a good representation of her at the present time; and yet none of these witnesses testifying in May, 1918, have the slightest doubt of the identity of the woman whom they saw only for a few brief minutes, and in the most casual way, nearly two years before, and they are unable to recall any detail of her dress or appearance, or baggage, and only surmise that Edwards and the woman with him actually occupied the same bedroom.

"The entry of the registry was written by the man; whether it was done in the presence of the woman does not appear; the registry sheet shows that the expression '& wife' was not written on the same line with the name 'Wm. N. Edwards,' and the address 'Summit, N. J.,' but was interlined between the name 'Edwards' and the word 'Summit.' Why was this interlineation necessary? Had Lyons, as Edwards, forgotten that he was accompanied to the hotel with a woman? The name 'Wm. N. Edwards' and the place 'Summit, N. J.,' are written in a large bold hand and were apparently written at the same time; the expression '& wife' is written in much smaller letters

and it was so inconspicuous that it was overlooked by me when I first examined this page of the register.

"It is hardly reasonable to suppose that Lyons, as Edwards, had forgotten the woman he is said to have brought to the hotel, or that he did not consider it necessary to register her; he had sufficient space on the line on which he wrote his fictitious name and address to have entered the fact that a woman, passing as his wife, was with him; that he failed to register her except as an afterthought, causes me to suspect that the thought of having a pretended wife with him was very much of an afterthought; in fact so long after, that I believe the interlineation was not written by Lyons until after he had his quarrel with Mrs. Smith. This was easily possible, as the hotel people were apparently on very friendly terms with the supposed Edwards, and knew that he was a detective; the registry book was very loosely kept and no safeguards were apparently provided that would prevent Lyons from interlining the expression '& wife' at any time and on any page of the register. It is also significant that the parties who registered as Edwards and wife, of Summit, on three occasions in 1914, should be assigned to room No. 14, which Lyons and Mrs. Smith, as Edwards and wife, are said to have occupied in 1916, and little, if any, weight can be attached to Mrs. Reilly's testimony or her identification of Mrs. Smith as the woman Edwards introduced to her as his wife.

"Where an offence of this kind is sought to be established by other than direct evidence, the rule is well settled that the circumstances relied on to prove adultery must show both an inclination and an opportunity to commit the offence. The only evidence offered to show such an inclination on the part of Mrs. Smith is the fact that Lyons was a frequent visitor at her home, and that she seemed, to some of her neighbors, to think a great deal of him, and that she told one of these neighbors that if she could, she would marry Lyons if he were free, and not married.

"Lyons' visits to Mrs. Smith are explained by the testimony of her counsel who employed him and by her frequent statement to her neighbors that he was guarding the little girl so

91 N. J. Eq.       Smith v. Smith.

the father could not kidnap her. The alleged remark to her neighbor about marrying Lyons is not explained, but as I saw Mrs. Smith upon the stand and observed her in the court room at the former hearing, she impressed me as a nervous, high strung, temperamental woman, anxious for sympathy, and keenly appreciative of any kindness shown her, and she did not impress me as a woman of immoral tendencies or inclinations.

"There are, without doubt, certain suspicious circumstances in the case, but mere suspicion is not sufficient to justify a decree. The proof is not convincing that Mrs. Smith ever had the inclination or the opportunity to commit adultery with Lyons, or that she was ever at Coney Island with him, and his conduct and his failure to appear and testify, together with the questionable hotel registry and the unsatisfactory identification of the parties from their photographs, make the case too doubtful, and with such doubts in mind, I do not feel justified in branding this woman as an adulteress.

"I will therefore advise that the cross-petition be dismissed and that a decree be granted to the petitioner on her petition for cruelty."

*Mr. Elmer W. Romine,* for the respondent.

*Messrs. King & Vogt,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Foster.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—14.

*For reversal*—None.